```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _01/24/2024_
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
PERSON DOE,

                Petitioner,

-against-

FEDERAL BUREAU OF PRISONS and
WARDEN OF FCI,

                Respondents.

23 Civ. 5965 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Petitioner *pro se*, ▮,[1] brings this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, arguing that the time credits that they accrued pursuant to the First Step Act ("FSA") require ▮ transfer to prerelease custody. Pet., ECF No. 1. On September 18, 2023, the Court referred ▮ petition to the Honorable James L. Cott for a report and recommendation ("R&R"). ECF No. 10. On December 28, 2023, Judge Cott recommended that ▮ petition be granted. R&R, ECF No. 22. On January 16, 2024, the Government timely objected, arguing that Petitioner's participation in the Federal Witness Protection Program (the "Program") requires that Petitioner choose between prerelease custody and continued protection pursuant to the Program. Gov. Obj. at 2, ECF No. 27. For the following reasons, the Court OVERRULES the Government's objections and ADOPTS the R&R.

## BACKGROUND

    I.    Legal Background

         A.  Federal Witness Protection Program

"The Attorney General may provide for the . . . protection of a witness or a potential witness for the Federal Government." 18 U.S.C. § 3521(a)(1); ▮ Supp. Decl. ¶ 4, ▮.

---

[1] The Court granted Petitioner's motion to proceed under a pseudonym and ordered the docket sealed because of Petitioner's status as a cooperating witness. ECF No. 11.

"Before providing protection to any person under [the Program], the Attorney General shall enter into a memorandum of understanding with that person," which "set[s] forth the protection which the Attorney General has determined will be provided . . . and the procedures to be followed in the case of a breach."  18 U.S.C. § 3521(d)(1).  "The Attorney General may terminate the protection provided . . . to any person who substantially breaches the memorandum of understanding" after providing notice and the reasons for the termination.  *Id.* § 3521(f).  A termination decision by the Attorney General is not subject to judicial review.  *Id.*; *see J.S. v. T'Kach*, 714 F.3d 99, 104 (2d Cir. 2013) (Section 3521(f) "leaves a district court without power or discretion to hear challenges to Program terminations.").

Multiple government agencies are involved in administering the Program.  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ the Bureau of Prisons (the "BOP") manages the security of individuals who are in custody—referred to as "prisoner witnesses" ("PWs").  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

B. First Step Act

On December 21, 2018, the FSA was signed into law.  *See* Pub. L. No. 115-391, 132 Stat. 5194 (amending 18 U.S.C. § 3621 *et seq.*).  Pursuant to the FSA, the BOP "shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release."  18 U.S.C. § 3632(d)(4)(C).  If a prisoner was sentenced to a term of supervised release following incarceration, the BOP "may transfer the prisoner to begin any such term of supervised release at an

2

earlier date, not to exceed 12 months." *Id.* § 3624(g)(3). If the BOP decides not to move up the supervised-release date, or if the prisoner remains eligible after moving up ▮ supervised-release date, the prisoner "shall be placed in prerelease custody" pursuant to 18 U.S.C. § 3624(g)(2), which sets forth two forms of prerelease custody: home confinement or a residential reentry center ("RRC"), colloquially referred to as a halfway house.

To be eligible for transfer to either supervised release or prerelease custody, prisoners must meet three requirements. First, they must have "earned time credits . . . in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment."[2] *Id.* § 3624(g)(1)(A). Second, they must show "a demonstrated recidivism risk reduction" or "maintain[] a minimum or low recidivism risk."[3] *Id.* § 3624(g)(1)(B). Third, if seeking to transfer to supervised release, they must have been determined "to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner." *Id.* § 3624(g)(1)(D)(ii). If seeking to transfer to prerelease custody, they must have been determined "to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner" or had a petition approved by the prison warden. *Id.* § 3624(g)(1)(D)(i).

II.  Factual Background

   A.  ▮

On ▮, Petitioner was sentenced to a term of imprisonment of ▮ months for conspiracy ▮

▮

▮ Petitioner and the Government agreed that Petitioner would participate in the Program. ▮

▮ On ▮, Petitioner and the Government entered into a memorandum of

---

[2] Incarcerated persons may earn time credits under the FSA by participating in evidence-based recidivism reduction activities and productive activities while incarcerated. 18 U.S.C. § 3632(d)(4)(A). Persons serving a sentence for certain enumerated offenses are ineligible to earn time credits. *Id.* § 3632(d)(4)(D).
[3] The recidivism risk assessments are made pursuant to the "risk and needs assessment system" set forth in 18 U.S.C. §§ 3631–3635.

understanding ("MOU"), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and a PW agreement ("PWA"), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Petitioner is eligible to be transferred to supervised release on ▮▮▮▮▮▮, twelve months prior to their release date. ▮▮▮▮▮▮▮▮▮▮ Petitioner has accumulated additional time credits and, therefore, became eligible for transfer to prerelease custody on ▮▮▮▮ 2023. ▮▮▮▮▮▮▮▮▮ Petitioner has not been transferred and remains housed in ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ the BOP prison system." ▮▮▮▮▮▮▮

B.  The MOU and the PWA

Under the MOU, Petitioner is eligible "for the [PW] ▮▮▮▮▮▮ Program ▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

The PWA describes Petitioner's relationship with the BOP.  PWA at 14 ¶ A.  The BOP "will designate [Petitioner] to a facility where it is believed [Petitioner] will be safe and [Petitioner's] security requirements can be met."  *Id.* at 14 ¶ B(2).  Although consideration "will be given to placing [Petitioner] in an institution as close to [Petitioner's] family as possible, . . . [Petitioner's] safety and security requirements will be the most important determining factor."  *Id.*  "If the need arises, designations will be coordinated with ▮▮▮▮▮▮▮▮▮▮▮▮ any other agencies deemed appropriate by the BOP."  *Id.* at 15 ¶ B(2).  The BOP "will authorize and coordinate a redesignation

should it become necessary to transfer [Petitioner] to another facility," employing the "same precautions used during the initial designation process." *Id.* at 15 ¶ B(4).

The BOP's other obligations under the PWA include determining whether Petitioner "will be housed in the ███████████████████████████████████████████████████████████ ███████████████; ███████████████████████████████████████████████████████ ███████████████████████████████████████ transporting Petitioner—█ ███████████████████████████—without compromising their safety, *id.* at 15 ¶ B(5); ███████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████.

Petitioner "may request removal from the [P]rogram at any time." *Id.* at 19 ¶ D(3). The PWA also specifies procedures for release planning as Petitioner nears the end of BOP custody:



III.   <u>Government's Objection</u>

On December 28, 2023, the Honorable James L. Cott issued the R&R, recommending that the Petition be granted. Judge Cott determined that Petitioner sufficiently exhausted their administrative

5

remedies and was eligible for pre-release custody as of August 23, 2023. R&R at 10. Examining the language of the FSA, Judge Cott also held that 18 U.S.C. § 3632(d)(C) "does not afford the BOP any discretion in releasing eligible prisoners," *id.* at 11, and that Petitioner's PWA—executed before the FSA was enacted—did not foreclose their early release, *id.* at 13–15. Judge Cott recommended that if the BOP "is concerned about its practical ability to maintain the level of security required by the PWA, . . . it should determine how adequate security could be provided by other government agencies, rather than refusing to comply with its statutory obligations." *Id.* at 16.

On January 16, 2024, the Government timely objected. The Government does not contest the R&R's conclusions that Petitioner exhausted their remedies or that Petitioner has accumulated enough time credits to warrant transfer to prerelease custody. Gov. Obj. at 1. However, the Government objects to the R&R to the extent that it requires the BOP to provide Program services during prerelease custody. *Id.*

To support its objections, the Government submits a declaration from ▮▮▮▮▮▮▮▮▮▮, chief of the ▮▮▮▮ which "manag[es] the BOP's part" in the Program. ▮▮▮▮▮▮ Supp. Decl. ¶¶ 1–2. ▮▮▮▮▮▮▮ claims that, although the BOP would retain legal custody over Petitioner if they were transferred to prerelease custody pursuant to the FSA, *id.* ¶ 10, the PWA and MOU "do[] not contemplate the pre-release transfer of a PW to complete his [or her] custodial sentence in a community setting" like an RRC or home confinement, *id.* ¶ 9, and "expressly limit[] the acceptable housing options under the Housing provision [of the PWA] to ones within BOP's own institutions," *id.* ¶ 11. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6

According to ▮▮▮ the PWA contemplates "heightened security and supervision," ▮▮▮



The BOP "operationally could not acceptably mitigate this risk or otherwise provide the level of services contemplated by the PWA." *Id.* ¶ 20.

The Government also objects to home confinement, ▮▮▮

Both the Government and Petitioner state that Petitioner remains "subject to a very real, widespread threat." ▮▮▮ Decl. ¶ 18; *accord* Pet'r Reply Decl. ¶ 9, ECF No. 21. ▮▮▮

## LEGAL STANDARD

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party makes specific objections, the court reviews *de novo* those portions of the R&R to which objection is made. *Id.*; Fed. R. Civ. P. 72(b)(3). The Court may adopt those portions of the R&R to which no objection is made "as long as no clear error is apparent from the face of the record." *Oquendo v. Colvin*, No. 12 Civ. 4527, 2014 WL 4160222, at *2 (S.D.N.Y. Aug. 19, 2014) (citation omitted). An R&R is clearly erroneous if the reviewing court is "left with the definite and firm conviction that a mistake has been

committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (citation omitted); *see also Travel Sentry, Inc. v. Tropp*, 669 F. Supp. 2d 279, 283 (E.D.N.Y. 2009).

The Court may grant a writ of habeas corpus when a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Dhinsa v. Krueger*, 917 F.3d 70, 79 n.8 (2d Cir. 2019). A petitioner may use Section 2241 to challenge the "computation of a . . . sentence by prison officials." *Levine v. Apker*, 455 F.3d 71, 78 (2d Cir. 2006) (citation omitted). A petitioner must satisfy their burden of proof by a preponderance of the evidence. *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) (citation omitted).

## DISCUSSION

The FSA states that the BOP "shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C); *see id.* § 3624(g)(1) (setting forth eligibility criteria). Judge Cott found that the BOP does not have discretion to impose additional eligibility requirements or refuse to transfer eligible prisoners to prerelease custody. *See* R&R at 11–12 (collecting cases).

The Court agrees with Judge Cott and the line of caselaw that he cites.[4] *See Brodie v. Pliler*, No. 22 Civ. 3821, 2022 WL 16751908, at *4 (S.D.N.Y. Nov. 7, 2022); *United States v. Pouryan*, No. 11 Cr. 111-6, 2023 WL 3294360, at *1 (S.D.N.Y. May 5, 2023). The FSA sets forth eligibility criteria for a transfer to prerelease custody and, for prisoners that meet the criteria, uses the mandatory "shall." *Compare* 18 U.S.C. § 3632(d)(4)(C), *with id.* § 3624(g)(3) (using "may" to describe the BOP's authority to move up the supervised-release date); *see United States v. Kahn*, 5 F.4th 167, 174 ("The word 'shall,' in a statute, indicates a command; what follows the word 'shall' is 'mandatory, not precatory.'" (quoting *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 486 (2015)).

---

[4] The Government does not explicitly object to the R&R's holding, but its limited objections implicitly question the mandatory nature of the FSA. The Court would adopt the R&R's holding whether it applied a clear-error or *de novo* standard of review.

Moreover, the FSA designates which prisoners are ineligible to accrue time credits, *see* 18 U.S.C. § 3632(d)(4)(D), and requires the BOP to "ensure there is sufficient prerelease custody capacity to accommodate all eligible prisoners." *Id.* § 3624(g)(11). The FSA's comprehensive scheme, therefore, does not afford the BOP discretion to not transfer an eligible individual to prerelease custody. Under the FSA, Petitioner is eligible and has sufficient time credits to transfer to prerelease custody, and the BOP is obligated to implement the transfer.

The Government argues that the PWA is incompatible with the FSA and asks the Court to order that Petitioner waive either the FSA right or the PWA protections. The Court addresses each of its arguments in turn.

First, the Government contends that the Court has no jurisdiction to construe the PWA or require the Government to provide protection pursuant to the Program. Gov. Obj. at 13–15. The Court lacks jurisdiction to review Program terminations. *See* Gov. Obj. at 14–15; *J.S.*, 714 F.3d at 104 (citing 18 U.S.C. § 3521(f)). But, the Government has not terminated Petitioner's access to the Program, so the jurisdiction-stripping provision does not apply.[5]

Moreover, the Court has habeas jurisdiction to determine whether Petitioner's continued incarceration is unlawful. *See* 28 U.S.C. § 2241. The Government argues that, if Petitioner insists on PWA compliance, they waive their FSA right. If Petitioner waives their FSA right to release, then their incarceration would be lawful. *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (holding that a plaintiff must demonstrate confinement without consent for a false-imprisonment claim under New York law and the Fourth Amendment). Therefore, the Court has jurisdiction to decide whether the FSA and the PWA conflict. *See Adams v. United States*, 372 F.3d 132, 135 (2d Cir. 2004)

---

[5] Such termination is limited to either Petitioner's breach of the PWA or the provision of false information by Petitioner. ▇▇▇▇▇▇▇▇▇▇ Moreover, any Government termination is subject to appeal by Petitioner—▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ The Government does not claim, nor can it, that Petitioner breached the PWA by seeking ▇ FSA remedies.

(holding that § 2241 is the "proper means to challenge the *execution* of a sentence," including issues related to sentence computation and the "type of detention" (emphasis in original)). Although the Government argues that the PWA creates no binding obligations, it is incorrect: courts have enforced Program obligations through writs of mandamus under 28 U.S.C. § 1361.[6] *See Garmhausen v. Holder*, 757 F. Supp. 2d 123, 139 (E.D.N.Y. 2010); *see also Tisdel v. Witness Protection*, No. 21 Civ. 881, 2021 WL 1723521, at *2 (S.D. Tex. Apr. 30, 2021) (finding that "it is possible that [Petitioner] will be able to establish jurisdiction under the mandamus statute").

The Government next argues that the PWA conflicts with the FSA because the PWA does not extend Program services to prerelease custody. Gov. Obj. at 15–17, 21. The Court disagrees. The PWA states that it applies to Petitioner "while in the custody of the BOP." PWA at 14. Petitioner would remain in the custody of BOP if transferred to prerelease custody. ▆▆▆ Supp. Decl. ¶ 10. Therefore, the PWA does not conflict with the FSA.

The Government also contends that because the PWA does not mention that a PW can be transferred to prerelease custody—despite the existence of prerelease custody when the PWA was executed—Petitioner is not entitled to transfer to an RRC or home confinement. *Id.* But, the Government's argument ignores the sea change wrought by the FSA. Although prerelease custody was available prior to the FSA, this custody was limited only "to the extent practicable." 18 U.S.C. § 3624(c)(1). This discretionary language is omitted from the FSA's directive. *Id.* § 3632(d)(4)(C); *see Rotkiske v. Klemm*, 140 S. Ct. 355, 361 (2019) ("Atextual judicial supplementation is particularly inappropriate when, as here, Congress has shown that it knows how to adopt the omitted language or provision."). The FSA provides Petitioner with a broad right to prerelease custody that does not hinge on the BOP's determination of practicability. Moreover, Petitioner could not have waived this

---

[6] Indeed, the Government's request for the Petitioner to excuse it from providing protection services under the PWA would be unnecessary if the PWA imposed no obligations.

FSA right by signing the PWA because a defendant can only waive "known rights," and a right that does not yet exist cannot be known or, therefore, waived. *See United States v. Olano*, 507 U.S. 725, 733 (1993).

Next, the Government cites the housing provision of the PWA, which states that the BOP will decide "whether [Petitioner] will be housed in the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇" and argues that this limits "where the BOP has discretion to house" a PW. Gov. Obj. at 15–16. But, as Judge Cott indicated, the Government's interpretation of the housing provision is incorrect. R&R at 13. The PWA includes a process by which the BOP shall designate a facility for Petitioner. *See* PWA at 14 ¶ B(2). The separate housing provision quoted by the Government is part of the intake process once a facility has been designated and permits the BOP to choose between ▇▇▇▇▇▇▇▇▇▇▇. *See id.* at 15–16 ¶ B(6) ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ The provision does not limit the facilities to which the PWA applies.



The Government then argues that the PWA applies only when "physical security [is] managed by the BOP" and does not apply outside of BOP institutions. Gov. Obj. at 16–17. The Government's reading of the PWA is contradicted by its text. BOP custody is not limited to BOP institutions: the PWA contemplates that Petitioner can be held in a state facility and that Petitioner can take part in short-term activities outside of BOP institutions. *Id.* at 15 ¶ B(6). The PWA also requires the BOP to coordinate with other agencies—▇▇▇▇▇▇▇▇▇▇▇▇▇—to provide Program services "when the need arises." *Id.* at 15 ¶ B(2).

Finally, the Government claims that the BOP cannot—as a practical matter—provide ▇▇▇▇ security in prerelease custody settings. But, the Government has not demonstrated that it cannot meet these dual legal obligations. The Government's explanation ▇▇▇▇▇▇▇▇▇▇▇▇▇ is speculative and not specific to Petitioner. *See* ▇▇▇▇ Supp. Decl. ¶ 22 ▇▇

11

███████████████████████████████████████████████████████████████

███████████████████████████████████████ Moreover, the Government's claim about its ability to provide security in prerelease custody assesses only the BOP's capabilities.  However, the MOU and the PWA make clear that Petitioner's safety is the responsibility of the Government and that the BOP must coordinate with other agencies—████████████████████████████—to provide services when it is not capable of doing so.  PWA at 15 ¶ 2; ███████ Decl. ¶ 12.  Judge Cott directed the BOP to "determine how ████████ security could be provided by other government agencies, rather than refusing to comply with its statutory obligations."  R&R at 16.  The Government offers no response, stating only that ████████ has no arrangement to provide PWs with protection in a prerelease custody setting.  ████████ Supp. Decl. ¶ 14.  That gap is not of Petitioner's making, and the Government is directed to immediately implement a prerelease arrangement that provides Petitioner with adequate protection.  The Court rejects the Government's contention that Petitioner is obligated to waive their rights under the PWA in order to be eligible for such services.

## CONCLUSION

For the foregoing reasons, the Court OVERRULES the Government's objections, ADOPTS the R&R in its entirety, and GRANTS ████████ petition for a writ of habeas corpus.

SO ORDERED.

Dated: January 24, 2024
       New York, New York

_____
ANALISA TORRES
United States District Judge